UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS BRIM,

        Plaintiff,

vs.

KEN MCKEE, D. WISER,
M. VROMAN, *et al.*,

        Defendants.[1]

                                              /

Case No. 4:04-CV-12

Hon. Gordon J. Quist

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is before the court on defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56 (docket no. 29).

Plaintiff claims that defendants violated his Eighth and Fourteenth Amendments as a result of his release from administrative segregation into the general prison population, when he was attacked shortly thereafter. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). "[T]o state a claim under section1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the 'Constitution and laws' of the United States, and (2) plaintiff must show that the defendant deprived him of this federal right 'under color of law.'" *Jones v. Duncan*, 840 F.2d 359,

---

[1] Defendant "D. Wiser" has been identified in other court filings as Assistant Deputy Warden Daniel J. Wilson.

360-61 (6th Cir. 1988). Plaintiff seeks compensatory damages, punitive damages and injunctive relief.

### I.    Background

Plaintiff arrived at the Michigan Reformatory in Ionia, Michigan (now known as Bellamy Creek Correctional Facility or "IBC") on April 22, 1999. *See* Transfer Order (4/26/00), attached to plaintiff's Brief in opposition; McKee Affidavit at ¶ 1. While there, plaintiff apparently had some encounters with other inmates. Subsequently, a Segregation Classification Hearing Report concluded that plaintiff was involved in a gang fight/confrontation on January 10, 2000, and was involved in a fight on January 12, 2000. *See* Seg. Class. Hearing Report (3/2/00) attached to plaintiff's Brief in Opposition. When plaintiff was released from segregation on February 25, 2000, he was surrounded in the yard and "there was a threat to stab him." *Id.* The hearing officer concluded that plaintiff "could be in danger" in the general population at IBC, and that he should be placed in administrative segregation for safety and transferred to an alternate facility. *Id.* A Transfer Order states that "[t]his transfer is being requested as it is believed prisoner can be safely return[ed] to GP [i.e., general population] at a[n] alternate facility." Transfer Order (4/26/00). Plaintiff was apparently transferred to the to the Michigan Youth Facility (MYC) on or about April 28, 2000. *Id.*

The following year, on August 1, 2001, plaintiff was transferred back to IBC. Amend. Comp. at ¶ 12. In his affidavit, defendant McKee states that plaintiff was placed in administrative segregation at IBC because he had received 19 major misconducts while at the MYC. McKee Aff. at ¶ 4. While plaintiff was in administrative segregation at IBC, he was issued a notice

of intent to classify him to administrative segregation, based upon a threatening letter plaintiff had written to the Michigan Supreme Court. *Id.* at ¶ 5.

An "Administrative Segregation Review Report - Bi-Monthly Review" dated September 9, 2001, stated that plaintiff had good attitude and social adjustment with staff, prisoners and housekeeping; that he had no problem with behavior and conformity to rules; and that he had an overall good adjustment. Administrative Segregation Report (ASR) attached to McKee Aff. as Exh. 1-e. The report indicated that plaintiff had made good progress toward his proposed program while in classification, had good prospects for reclassifications in the immediate future, and made the recommendation to "reduce segregation" pending a Michigan State Police investigation of the threatening letter sent to the Michigan Supreme Court. *See Id.*, Notice of Intent to Classify Segregation (9/17/01), attached to McKee Aff. as Exh. 1-f.

In his affidavit, defendant Wilson stated that he and defendant Vroman, as members of the Security Classification Committee (SCC), met with plaintiff on September 26, 2001 and decided to reduce his administrative segregation status. Wilson Aff. at ¶ 5. Wilson and Vroman recommended that plaintiff be released to the general population when bed space became available. McKee Aff. at ¶ 6. A subsequent ASR states that on September 26, 2001, plaintiff had good attitude and social adjustment with staff, prisoners and housekeeping; that he had no problem with behavior and conformity to rules; and that he had an overall good adjustment. ASR attached to McKee Aff. as Exh. 1-g. The report indicated that plaintiff had made good progress toward his proposed program while in classification, had good prospects for reclassifications in the immediate future, and made the recommendation to "reduce segregation." *Id.*

On September 26, 2001 plaintiff was reclassified to join the general population. Amend. Compl. at ¶ 12. On that date, plaintiff allegedly told defendant Wilson that he did not want to return to the prison yard "to avoid being harmed." *Id.* at ¶ 13. Defendant Wilson allegedly told plaintiff that he would get a misconduct if he did not return to the general population and that plaintiff "would be fine." *Id.* Plaintiff was released into the general population on September 29, 2001. *Id.* at ¶ 14. Plaintiff alleges that on October 1, 2001 he "was stabbed in the back of his neck and back by inmates who belonged to a prison gang," and stayed in his cell badly injured and in pain without any medical assistance or help until October 4, 2001, when four prisoners tried to stab plaintiff and he started fighting back. *Id.* at ¶¶ 15-17.

Defendant McKee's affidavit states that on October 4, 2001, plaintiff was charged with two counts of threatening behavior (toward a staff member and another prisoner), one count of possession of a weapon and one count of assault and battery on staff. McKee Aff. at ¶ 8. The charges arose from an incident in which plaintiff charged another prisoner with a weapon (a razor blade attached to a long handle), swung the weapon at staff as they tried to intervene, and then spat on an officer when he was restrained. *Id.* Plaintiff was found guilty of all charges on October 10, 2001. *Id.* The SCC reclassified plaintiff to administrative segregation on October 11, 2001 and plaintiff was transferred to Ionia Maximum Correctional Facility on October 25, 2001. *Id.* at ¶¶ 9-10. After this incident, Special Problem Offender Notices (SPONs) were issued naming the officer and the prisoner assaulted by plaintiff. *Id.* at ¶ 8. The SPONs recommended that plaintiff and the other prisoner should not be housed at the same institution and that plaintiff should not be housed at the same facility as the officer. *See* SPONs attached to McKee Aff. as Exhs. 1-Q and 1-R.

4

**II.     Defendants' motion for summary judgment**

**A.     Legal standard**

Defendants have moved for summary judgment pursuant to Fed. Rules Civ. Proc. 56(b). In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the court described the standard for deciding such a motion as follows:

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 2552-53, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); *LaPointe*, 8 F.3d at 378. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 252, 106 S. Ct. 2512.

*Id.* at 478-79. "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

In his verified amended complaint, plaintiff alleges that defendants violated the Eighth Amendment's proscription against cruel and unusual punishment. Specifically, plaintiff contends that defendants did not comply with Michigan Department of Corrections (MDOC), Policy Directive 05.01.140(G). *See* Plaintiff's Response. This policy directive provides as follows:

5

> Staff shall ensure that transferring prisoners receive appropriate file review for special problem offender notices and medical and psychiatric clearance prior to transfer. This shall include a review of the Department's computerized database (e.g., CMIS, OMNI), as needed. Appropriate Bureau of Health Care Services (BHCS) staff shall notify the Warden or designee if a prisoner has a medical condition which necessitates any special travel restrictions or needs (e.g., transported lying down); the Warden or designee shall ensure the information is listed on the appropriate transportation detail. A prisoner with medical or mental health service needs shall not be transferred to a camp unless first cleared for placement in accordance with medical screening criteria developed by BHCS.

Policy Directive 05.01.140(G).

The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). An Eighth Amendment violation may occur when prison guards fail to protect one inmate from an attack by another inmate. *See Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990). However, "not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). To establish an Eighth Amendment claim that a prison official failed to protect an inmate, the inmate must show that the official was deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). "To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294, *quoting*

*Farmer*, 511 U.S. at 829, 847. Generally, an isolated or occasional attack is insufficient to state an Eighth Amendment claim. *See Stewart v. Love*, 696 F.2d 43, 44 (6th Cir. 1982).

### B. Analysis

#### 1. Defendant McKee

Plaintiff contends that defendant McKee is liable for damages because IBC is "his prison" and he oversees the prisoners that are transferred out of segregation. Plaintiff's Brief in Opposition at 5. It is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Dep't. of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.*

It is undisputed that defendant McKee was not at IBC when plaintiff was transferred to IBC and placed in administrative segregation on August 1, 2001. Defendant McKee states in his affidavit that he was deputy warden at another correctional facility prior to August 19, 2001. McKee Aff. at ¶ 1. Defendant McKee further states that he had no knowledge that plaintiff had conflicts with other prisoners at IBC, that he had no direct involvement in plaintiff's release from administrative segregation, and that there were no SPONs in plaintiff's file indicating that he had problems with other prisoners at IBC prior to his release into the general population. *See id.* at ¶¶ 1, 7. Nothing in the record indicates that defendant McKee had any direct involvement in plaintiff's

7

placement into the general population on September 26, 2001. Accordingly, defendant McKee's motion for summary judgment will be granted.

### 2. Defendants Wilson and Vroman

In his verified complaint, plaintiff states that he advised defendant Wilson that he did not want to return to the prison yard "to avoid being harmed" by other inmates and that Wilson said that "if you don't go you will get a misconduct," that plaintiff "would be fine" and that the altercation occurred "a long time ago." Amended Comp. at ¶ 13. Defendants Wilson and Vroman, as members of the SCC, presumably had access to plaintiff's prior administrative segregation history at IBC. Nevertheless, plaintiff has presented no evidence that he told either Wilson or Vroman that a particular person or gang at the IBC was involved in his previous fight.

The March 2000 IBC Segregation Classification Hearing Report indicates that plaintiff was known to be in danger by an unknown gang at that time and recommended placement in administrative segregation and transfer to an alternate facility. This was done. The record reflects that plaintiff was transferred to MYC in April 2000. He was returned to IBC until August 2001, well over a year later. Upon his return he was placed in administrative segregation. There is no evidence that plaintiff's record included SPONs related to other prisoners at IBC when he was returned to IBC in August 2001. Furthermore, plaintiff has never identified the gang or individuals responsible for either the alleged stabbing that occurred on October 1, 2001[2] or the attacks in January and February

---

[2] In his verified amended complaint, plaintiff alleges that he was stabbed on October 1, 2001 and stayed in his cell "badly injured" and "in pain." However, defendant's medical records show no report of an injury on October 1, 2001. *See* defendant's medical records attached to defendant's Brief as Exh. 4. The medical records indicate that it was not until October 4, 2001, that plaintiff reported that he was stuck with a shank in the lunch chow line on October 1st. *Id.* at p. 2. This was, coincidentally, the same day plaintiff was himself charged with four violations. At that time, plaintiff was observed to have two scabs approximately 2 mm in diameter in his neck. *Id.* For purposes of this motion, the court accepts as true the

2000, prior to his transfer out of IBC. On the contrary, at the March 2000 hearing, plaintiff <u>denied</u> that someone tried to stab him or that he made such a report to the prison staff. Seg. Class. Hearing Report attached to plaintiff's Brief in Opposition as Exh. 4.

Viewing these facts in the light most favorable to plaintiff, there is no evidence that defendants Wilson and Vroman were subjectively aware of a risk that plaintiff would be attacked at IBC when he returned to the facility in August 2001 or that they disregarded such a risk when they agreed to release plaintiff into the general population at IBC in September 2001. *See Farmer*, 511 U.S. at 829, 847; *Greene*, 361 F.3d at 294. At most, these defendants were aware that plaintiff had had some type of altercation with some unidentified prisoners or gang(s) approximately 1 1/2 years prior to his release from administrative segregation. An isolated or occasional attack is insufficient to state an Eighth Amendment claim. *See Stewart*, 696 F.2d at 44.

### IV.    Conclusion

Defendants' motion for summary judgment (docket no. 29) will be **GRANTED**. A judgment will be entered consistent with this opinion.

Dated:  September 6, 2005                         /s/ Gordon J. Quist
                                                                            GORDON J. QUIST
                                                               UNITED STATES DISTRICT JUDGE

---

allegations as set forth in plaintiff's verified complaint. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (allegations in a verified complaint have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment).